# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,      :
                               :
   Plaintiff,              :
                               :
vs.                            :      CASE NO.
                               :      1-19-CR-0038-18NT-RGV-3
                               :
QUANTAVIUS FOSTER,             :
                               :
   Defendant.              :

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SUPPRESS

The Defendant has filed a Motion to Suppress Evidence Illegally Obtained by the

Government. An evidentiary hearing was held where the government introduced

evidence in opposition to the Motion.  The Defendant will show that a review of the

testimony of the investigating agent and the arresting officer shows they were

designed to separate probable cause that may have been generated by the federal

investigation from the probable cause developed to support the stop and subsequent

search of the Defendant's vehicle by the Officer of the Richmond County Sheriff's

Department, who was tasked with stopping the vehicle.

   This is of particular importance when, as here, the question of whether

information developed in federal investigation can be seen by this Court as being a

part of the totality of the circumstances, in determining whether the individual officer had probable cause to stop, detain or search a vehicle.

Special Agent Gray and Officer Jones introduced evidence that there was no connection whatsoever in the decision-making process of the arresting officer who made the traffic stop and state and federal officers involved in the investigation.

The testimony in this case appears to have been designed as an effort to defend against an attack on the stop, detention, and search as being pretextual.

The evidence presented by the government concerning the arresting officer's stop, detention and search of the vehicle occurs under questionable circumstances.

The government was aware what the officer's testimony would be; that from his initial observations of the Defendant's vehicle, he did not believe there was a commission of a traffic offense requiring a uniform traffic citation.

In observing the vehicle driven by the Defendant, the officer determined that what he saw should result in an advisory warning of the hazards of following too closely to the vehicle in front of you. This becomes of further importance to the Court when, as here, the officer maintains when he made the decision to issue a warning, he had no idea that the individual alongside him was the Defendant.

Holding aside the issue of the traffic officer's credibility, his testimony suggests that he abandoned his instructions to stop a vehicle that may have been involved in a drug transaction, to issue a warning to another driver because he believed that driver's vehicle was too close to the truck in front of him. The

Defendant will address the substantive facts introduced in evidence by this officer as his hearing testimony is scrutinized

In his testimony at the evidentiary hearing, the officer stated that until he was able to position his vehicle behind the BMW and read the license plate, he did not know that the vehicle he was pulling over was the vehicle he was instructed to seek out and determine whether he could develop probable cause to stop.

Defense attorneys have commonly found themselves faced with a situation where a local constable is asked to perform a traffic stop on a suspected perpetrator, for the purposes of searching the car.

Defense attorneys are thus placed in a position to face the almost impossible task of proving the stop is pretextual, and that the officer did not actually observe a traffic infraction.

Here, the officer maintains that he observed a vehicle, not knowing it was the Defendant, and made a decision that while a traffic infraction had not occurred, it would be appropriate to issue an advisory warning of the hazards of following too closely to another driver. In doing so the officer is creating a dilemma for both the government and defense counsel that this court must resolve.

The issue of whether this stop, detention, and search of the Defendant's vehicle becomes more complicated when the government, as here, presents evidence that the probable cause developed by the investigation in this case, cannot be part of the totality of circumstances in the probable cause developed by the arresting officer in

the traffic stop, detention, and search.

Special Agent Gray goes to great lengths to testify that protecting the integrity of the investigation is such that information regarding the investigation is not, and cannot be a part of, the probable cause developed by the arresting officer to stop, detain, or search the vehicle targeted by the government.

Special Agent Gray goes on to say that this separation, and the independent development of probable cause by the arresting officer, is for the further purpose of allowing that independent probable cause to be used in state charges as the federal investigation continues.

Special Agent Gray emphatically states both the reasons for, and how the two investigations in the development of probable cause in the stop and search of the vehicle, were kept separate in this case.

## CITATIONS TO TRANSCRIPTS

I.    PROBABLE CAUSE FOR THE STOP, DETENTION, AND SEARCH ARE SEPERATE AND NOT LINKED TO THE FEDERAL INVESTIGATION

### (TESTIMONY OF SPECIAL AGENT JONATHAN GREY)

PAGE 16 LINES 11-25

Q. Did you make any contact with Richmond County Sheriff's Office?

A. We did. So based on the wire intercepts and the activity that we specifically observed in that transaction between Mr. Foster and Berenice, we did believe that

a drug transaction had occurred. And based on that, I communicated to the Richmond County Narcotics Unit that we would be following Mr. Foster away for roughly five to 15 minutes or so. And then once we were a little bit away from the deal location, I requested the narcotics unit to ask for a uniform patrol unit to conduct a traffic stop on Mr. Foster, once they are able to obtain and develop their own independent probable cause.

Q. All right. And what was the purpose of asking them to obtain their own independent probable cause?

### PAGE 17 LINES 1-6

A. It's just another layer to -- to assist in the investigation and to strengthen -- strengthen our case. And we also typically do that on any wire -- wire case specifically to try and establish some -- some independence from the information that we have as the case agents and members participating in the wire case ..................

### PAGE 17 LINES 6-9

So that we can ultimately have state charges taken out and protect the integrity of the ongoing wire investigation so that we're not required to disclose there's an ongoing active Title III investigation.

## PROBABLE CAUSE SEPARATED FROM INVESTIGATION AND NOT PART OF STOP OR SEARCH

### PAGE 23 LINES 4- 16

Q. And when you come to a conclusion that there's probable cause that a felony -- a serious felony has occurred, what do you generally do in your business as a law enforcement officer?

A. It depends, sir. I mean, in my line of work, specifically as a task force officer, there are many times we observe serious drug felonies being conducted and we don't take any action at that point in time other than conducting surveillance and documenting the surveillance and to assist in developing a stronger, larger investigation.

Q. When you say "stronger, larger investigation," how much stronger and larger could it be beyond arresting a person that you see engaged in a felony?

PAGE 23 LINES 17-19

A. As I stated previously, it was an ongoing Title III investigation with multiple targets involved in addition to Mr. Foster.

## FEDERAL AUTHORITIES CHOOSE NOT TO EXERCISE PROBABLE CAUSE THEY HAVE DEVELOPED TO MAKE AN ARREST

PAGE 24 LINES 10-14

Q. When she left, your worries about the integrity of the investigation and word getting out kind of went away because all you had was Mr. Foster sitting in the parking lot now, as I understand you're reporting, and he didn't leave for a bit of time

PAGE 26 LINE 25 and PAGE 27 LINES 1-13

Q. Did you ask a unit, with the radio you had from local law enforcement, to make that stop?
A. I asked the Richmond County narcotics officer, that was out there with us on surveillance, to coordinate one of his patrol units to initiate a traffic stop on Mr. Foster's vehicle upon developing independent probable cause.
Q. And you say that you do that to bolster your case -- to bolster your narcotics case. You want to have a traffic stop -- you want to have a local law enforcement stop someone when you say that you've already had probable cause to believe that a crime had been committed. Why is that?
A. It is, again, to protect the integrity of an ongoing Title III investigation.

## TRAFFIC STOP AND FEDERAL INVESTIGATION IS SEPARATE

PAGE 27 LINES 18-25

Q. Well, you're want to protect the integrity of your investigation -
A. Yes, sir.

Q. -- by having local law enforcement initiate a traffic stop at your request; is that correct?

A. That is correct.

Q. What happens if local law enforcement doesn't believe there was any traffic infraction?

PAGE 28 LINE 1-2

A. Then they wouldn't make a traffic stop based on their independent probable cause because there wouldn't be none.

PAGE 28  LINES   4-........8-16

Q. What happens if they don't stop him? …..............

A.   If, for some reason, the uniform patrol unit was not able to develop probable cause, then that's when a discussion would be had amongst the case agents to determine if we wanted to initiate enforcement action and still have them conduct a stop on Mr. Foster. However, that stop would then be based on what we observed and the totality of it being merged with the wire intercepts. But we did not have to do that or have that discussion because the marked unit was able to develop their own probable cause.

## INDEPENDENCE OF TWO INVESTIGATIONS CONFIRMED AT TIME OF ARREST

PAGE 38 LINES 6-21

Q. Were you present when he was arrested?

A. Was I pres- -- I was in the area and observing him being arrested.

Q. Were you in the parking lot there at the gas station?

A. I was not.

Q. Were there any agents of your task force in that parking lot?

A. No, sir.

Q. Okay. Were there any agents of local authorities that were working with you in that parking lot when he was arrested?

A. There were no agents that were with us in surveillance in that parking lot, no, sir.

Q. Okay. I'm talking about the local authorities?

A. To the best of my knowledge, none of the narcotics investigators that were assisting us with that operation, that were conducting surveillance, were present specifically at that BP gas station where the traffic stop was made.

## II.   ARRESTING OFFICER JONES MAINTAINS THAT HIS DEVELOPMENT OF PROBABLE CAUSE TO STOP, DETAIN, AND SEARCH DEFENDANT WERE DISTINCT FROM FEDERAL INVESTIGATION

### (TESTIMONY OF RICHMOND COUNTY SHERIFFS DEPT. OFFICER BILLY JONES)

### PAGE 71 LINES 6-25

Q. How is it that you came alongside the defendant as opposed to pulling behind him as basically you were instructed by the federal authorities?
A. I don't understand your question.
Q. Well, you were told to intercept a vehicle that was suspected of containing narcotics; is that correct?
A. Possibly containing narcotics, yes.
Q. Okay. That's -- that's what you were told. And did you not realize it was his vehicle until you got alongside of him?
A. Yes. I saw the traffic violation first, and the realized it was the same vehicle.
Q. Okay. So you didn't -- you didn't run a plate and say, oh, no, that's the guy I'm looking for?
A. I did not. They gave me a plate number.
Q. They gave you plate number. They gave you his name, too?
A. Sir?
Q. They gave you his name, too?
A. No.

### (BRIEF ARGUMENT)

Here the officer suggests that he came upon the Defendant's vehicle following too closely, recognized the danger and then waved the vehicle over. He further testifies that he didn't realize that the person he was pulling over was the Defendant

until such time as he read the license plate number. He then allegedly realized it was the plate number that had been given to him of the vehicle that he was supposed to apprehend. While the statement is incredulous, it appears to dovetail the notion of him developing independent probable cause to stop.

### PAGE 72 LINES 5-25

Q. Okay. When you -- the video depicts your car behind him. How is it that you directed him to get to this gas station, or he got to the gas station when the vehicle in front of him came to a stop and he was so close to it? How did he get --
A. Because I'm not going to stop a car in the middle of an intersection. I'm going to stop at a safe place that's safe for the driver and myself.
Q. So when -- when did you -- when did you initiate that procedure?
A. Shortly after I witnessed the violation.
Q. Okay. And then did he go through the intersection? Did the traffic start moving again?
A. Yes, it did.
Q. Okay. And then did you pull behind him?
A. I did, yes.
Q. Okay. And when did you direct him to pull over with your -
A. I didn't -- I didn't direct him. I got behind him, turned my blue lights on. He picked the location that we pulled over at
Q. Okay. So you -- you turned your lights on and he pulled over. And at this time you were able to see the license plate?
A. Yes.

### PAGE 73 LINE 1-5

Q. Okay. Was it -- were you able to, at that time, confirm that the license plate that you had been given by the federal authorities was the license plate that matched the car that you were now behind?
A. Correct.

### PAGE 73 LINES 6-9

Q. Okay. Did that remain in your mind throughout this stop?
A. It did not.

Q. You just let it go? You just forgot all about it?
A. That's correct.

## (BRIEF ARGUMENT)

Here, the testimony of Officer Billy Jones is clear that he was able to completely separate himself from any information that may have been given to him by other state, federal, or local authorities, with regard to an ongoing investigation, where he was asked to develop probable cause on his own for a vehicle that may contain narcotics.  As stated above, he just let those statements go, and never thought another thing about it.

This is important when the Court considers the totality of the circumstances. This officer testified that in his judgment in developing probable cause to stop the vehicle, he did not consider that there was an investigation, or that he had been asked to stop a vehicle that may be in possession of narcotics.

This testimony is consistent in what would the government would expect the officer to say, given the testimony of Special Agent Gray. Consistent with the government's theory of separation, when asked if the federal investigation had anything to do with his stopping, searching, or detaining the vehicle, the officer maintained he developed his own probable cause based upon nervousness of this Defendant.

## FORGOT ALL ABOUT IT

<u>PAGE 73 LINES 8-12</u>

Q. You just let it go? You just forgot all about it?
A. That's correct.
Q. Okay. Is -- when you give -- but you decided you were going to give him a warning?
A. I did.

## (BRIEF ARGUMENT)

For the purpose of the stop, the Defendant would suggest to this Court that a stop solely for the purpose of giving an individual a warning is different from the stop for a traffic offense, and then changing your mind to give the individual a warning.  Here, Officer Billy Jones says that it was his intent, from the beginning of observing the manner in which the Defendant was driving, that he was going to give him a warning when he stopped him.

Of particular note is the fact that Special Agent Gray had at one time in his experience worked in traffic enforcement, and he had this to say about a warning;

## NOTE:
## STOP TO GIVE WARNING  NO VIOLATION OBSERVED
## TESTIMONY OF SPECIAL AGENT GREY

<u>PAGE  29 LINES 14 25</u>

Q. So he was given a warning?
A. As far as I recall, yes, sir.
Q. Okay. And have you ever worked as a uniformed officer conducting traffic investigations?

A. Yes, sir.

Q. You have?

A. Yes, sir.

Q. What is a warning?

A. What is a warning?

Q. Yes.

A. A warning is -- is a document that has a lot of the same……..

PAGE 30 LINE 1-10

…...information that would be on a uniform traffic citation, including the driver's name and vehicle and license number, et cetera, the traffic stop location, the reason for the traffic stop. And instead of being issued a citation, you're given a warning. Exactly what a warning is.

Q. It's not a citation for the violation of a traffic law, is it?

A. A warning is not a uniform traffic citation, no, sir.

Q. So the Richmond County officer that stopped the car did not develop probable cause that a traffic violation had occurred, did he?

A. No, sir. I've -- I've stopped multiple vehicles as a uniform patrol officer for committing multiple violations where they could have been issued a citation, but I issued them a warning instead. It does not mean that they did not commit the violation. It just means that I chose and exercised my discretion to issue a warning versus a citation.

**(BRIEF ARGUMENT)**

Special Agent Craig has not distinguished, as this Court should, that his testimony represents instances where he has changed his mind and issued a warning. The testimony of Officer Billy Jones however states unequivocally that as he observed the conduct, he immediately made the determination that he would issue a warning to the driver.

## TESTIMONY OF OFFICER BILLY JONES

### PAGE 69 LINES 8-12

Q. Okay. As I understand your testimony and the reports that I'm -- I'm
seeing, as you sit here today, you were not now or then going to write this
individual a citation for following too closely. You were giving him a
warning; is that correct?
A. Correct. That's what I told him, yes.

### PAGE 80 LINES 16-20

Q. You try to call it like you see it before you issue a citation?
A. Absolutely.
Q. Okay. And you did that here?
A. Absolutely.

### PAGE 81 LINES 1-3

Q. And -- and that's kind of what you did here? You used your own mind;
you said I'm going to give them a warning?
A. Yes

## THE ONLY PROBABLE CAUSE DEVELOPED BY OFFICER JONES WAS
## NERVOUSNESS

### PAGE 77 LINES 1-10

Q. Have you had any courses that had anything to do with psychology and
individuals' basic makeup?
A. No, sir.
Q. So in order for you to make a determination of whether this man was
nervous or not, or whether or not it was just him, you would have had to
analyze in some way who he was. Did you do that?
A. Based on 20-plus years of law enforcement experience I've stopped
thousands of cars. And, you know, when someone's nervous,
When they're nervous their nervous when they're not, they're not.

## (BRIEF ARGUMENT)

Officer Billy Jones made a determination that his probable cause to detain and search the Defendant's car was based upon nervousness.

It is well recognized by the courts nervousness alone is not a basis for determination of probable cause to detain or search an individual or his vehicle.

The Defendant was therefore subject to an unlawful detention, while the officer called for a dog based upon the Defendant's nervousness. When questioned whether he had any other reason for the determination, Officer Jones suggested that he had a suspicion, but he didn't know what it was.

<u>PAGE 77 LINES 20-25 ,,,, PAGE 78 LINES 1-2</u>

Q. Did you observe anything else that would -- that would make you want to call a dog?
A. I went and asked for consent to search his vehicle based on his nervousness, level of nervousness, the singing during the traffic stop, the looking around, you know -- no. That was the basis for me asking for consent to search. When he denied consent to search, then I called for a K-9

<u>PAGE 82  LINES 7-13</u>

Q. Had he opened the trunk when he came around the car after you told him to exit the vehicle, would you have searched it?
A. Absolutely not.
Q. No matter if he opened it or not?
A. I had no reason to.
Q. None at all?
A. No

<u>PAGE 86 LINE 25</u>

Q. Did you -- did you believe that you had developed independent ........

## PAGE 87  LINES 1-7 AND  LINES 15-19

……..probable cause in this case?
A. I did.
Q.  And given that independent probable cause, did you intend to let Mr.
Foster go with a warning as you developed it?
A. Not at that point. Once I had reasonable suspicion that criminal activity
was -- was going on, I did not.
Q. Mr. Jones, what criminal activity did you believe was going on?
A. Well, I have no idea. It's my job to investigate.
Q. Just your feeling?
A. Yes, sir.
Q.  All right. Did -- did you believe that there was reasonable suspicion
based on articulable facts from what you observed that Mr. Foster -- to
believe that there could have been criminal activity being committed at that
time?
A. I did but I had no idea what it was.

## PAGE 82 LINES 14-18

Q. Okay. And the reason that you developed to call the dog was
nervousness?
A. Correct.
Q. That's it?
A. That's correct.

## PAGE 85 LINES 18-25

Q. So, Mr. Jones, you testified that you would not search a car unless you
had developed independent probable cause; is that correct?
A. That is correct.
Q. And independent probable cause, meaning probable cause separate from
any probable cause that may or may not exist from other law enforcement
agent; is that correct?
A. That's correct. That is correct.

## UNREASONABLE DETENTION

### PAGE 82  LINES 14-21

Q. Okay. And the reason that you developed to call the dog was
nervousness?
A. Correct
Q. That's it?
A. That's correct.
Q. And while you waited for the dog, you were detaining this man?
A. Yes. He was not free to leave at that point.
Q. That's what I'm talking about. You detained him then.

### PAGE 83   LINES 6-10

Q, Approximately how long did it take after you called for the dog?
A. Judging by the video it seemed very short
Q. Four or five minutes?
A. I don't even know if it took that long.

## (BRIEF ARGUMENT)
## THE STOP

In this case, the court is called upon to determine two elements of probable

cause. The first question is whether the officer engaged in the stop of the Defendant

had probable cause to stop the vehicle because of the commission of a traffic

violation.

The second is whether the officer had probable cause to detain the

Defendant for any period of time and search the Defendant's vehicle based upon the

Defendant's nervousness.

The Defendant believes that the issue of totality of the circumstances does not

become a factor in this case due to the testimony of both task force agent Gray and

Richmond County Sheriff's Department Officer Jones.

These law enforcement officials and their testimony in this case on the one hand disavow that any information regarding the underlying federal investigation should be used in the officer's independent development of probable cause, and on the other hand, supporting that position the affirmative statement by the arresting officer that he independently developed probable cause and paid no attention to the referral.

In fact, it was the Richmond County Sheriff's Department Officer's policy to ignore reasons for referrals and base his stop solely on his own reasons.

Likewise, his development of probable cause to detain and search the Defendant's vehicle was based solely on his own evaluation that the Defendant was nervous, with no thought to the referral. (He also stated that this policy had gotten him in trouble as he has let people go that were referred to be stopped by some other law enforcement agency.) (See transcript.)

The Defendant thus maintains that the stop was improper, because the officer did not observe what he felt rose to the level of a traffic violation in the first place, and pulled over the occupant of the vehicle alongside of him to advise on the hazards of being too close to a vehicle in front of you.

On that basis alone, insofar as the stop was improper, and the Motion to Suppress should be granted.

## THE DETENTION

Once the officer made the decision that he would detain the Defendant and search his vehicle based upon his nervousness, this Defendant was detained for an unreasonable period of time, since such detention was not based upon a factor which would give the officer probable cause to detain. The further comments of the officer, that he simply felt something might be amiss, can be described as a hunch and not a reasonable suspicion, giving further grounds for the grant of his Motion to Suppress. There is simply no probable cause to detain the Defendant or search his vehicle based upon a mere suspicion or hunch.

The Defendant's Motion to Suppress should be granted on the basis of the unreasonable detention and search of the Defendant's car, without probable cause or a reasonable suspicion that a crime had been committed.

## THE SEARCH

The determination to search the Defendant's car was based solely on the officer's observation of nervousness, and his belief that nervousness was sufficient to establish probable cause to search the Defendant's car.

It is widely known that nervousness standing alone is not sufficient to justify a search, as will be shown in the citation of authority to this Court.

> In Ross v. State of Georgia  276 Ga. App. 513 (Ga. Ct. App. 2005),  the Georgia Court of Appeals stated  "We have consistently held that "nervousness alone" is not sufficient to establish reasonable suspicion to detain and investigate illicit drug activity."

The Defendant's Motion to Suppress filed in this case should be granted, in that the detention of the Defendant and the search of his vehicle was improper and done without probable cause or reasonable suspicion that a crime had been committed.

## CITATION OF AUTHORITY
## THE STOP

Here, the officer states that as he was sitting in his patrol car next to the silver BMW, he did not know the person next to him was the alleged perpetrator when he decided to give that individual a precautionary warning about following too closely.

However, when his vehicle got behind the individual he intended to give the warning, he discovered that was who he was supposed to be looking for, and he had already made his decision. The Defendant believes that Helen v. North Carolina 574 U.S 54 (2014) addresses the conduct of the officer in the most appropriate way.

> In Helen the court opined " Traffic stops like those at issue here can be "annoying, frightening, and perhaps humiliating." *Terry, 392 U.S., at 25*, 88 S.Ct. 1868 ; see <u>Delaware v. Prouse</u>, 440 U.S. 648, 657, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). We have nevertheless held that an officer's subjective motivations do not render a traffic stop unlawful. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). But we assumed in Whren that when an officer acts on pretext, at least that pretext would be the violation of an actual law. See id., at 810, 116 S.Ct. 1769"

## THE DETENTION

While this Defendant does not concede the legality of the stop, the Defendant

believes the court should be guided by the principles set out in

*Byers v State of Georgia* 613 S.E 2ⁿᵈ 193 (Ga Ct. App. 2005)

> There the court noted   " Byers challenges the subsequent detention and search, which he claims went beyond the scope of the initial stop.  He points out that a display of nervousness, without more, is insufficient to authorize a search of a vehicle.  See *Montero v. State,* 245 Ga. App. 181, 184 ( 537 SE2d 429) (2000). Under the Fourth Amendment's proscription against unreasonable seizures, an officer must have reasonable suspicion of criminal conduct before conducting additional questioning   " See also *Heard v. State of Georgia* 325 Ga. App. 135 (Ga. Ct. App. 2013) Nervousness is not sufficient to justify an investigative detention. Even when we consider together the lookout information and Heard's nervousness, we cannot conclude that the officer was aware of circumstances sufficient to create a reasonable suspicion that Heard was involved in criminal activity other than the suspected traffic violation....extreme nervousness alone does not constitute a valid reason for detention based on suspicion of criminal activity  See, e.g., *State v. Thompson,* 256 Ga. App. 188, 190 ( 568 S.E.2d 254) (2002) ; *Montero v. State*, 245 Ga. App. 181, 184 ( 537 S.E.2d 429) (2000); *Migliore v. State of Ga.*, 240 Ga. App. 783, 786 ( 525 S.E.2d 166) (1999)

It was said in the 1959 case of *Henry v United States* 361 U.S. 96 (1959) "Arrest

on mere suspicion collides violently with the basic human right of liberty."

## THE SEARCH

> In Ross v. The State, 276 Ga. App. 513 (Ga. Ct. App. 2005), The Court of Appeals of Georgia determined that "We have consistently held that "nervousness alone" is not sufficient to establish reasonable suspicion to detain and investigate illicit drug activity."

The search in this case was done by a state officer acting without regard for a

federal investigation.  He, according to the evidence adduced at the hearing,

developed his own probable cause to search based upon nervousness.

This Court should apply this precedent and grant the Defendant's Motion to Suppress.

WHEREFORE, the Defendant requests that this Court grant his Motion to Suppress based upon:

a. The stop of the Defendant's vehicle was not a stop based upon a violation of law.  The officer determined beforehand that an instructional warning would be given, advising on following too closely the vehicle in front of you.  The stop was not based upon a violation of any law, and therefore causes that which flows from it to be suppressed as unconstitutional and improper;

b. That the detention of the Defendant beyond that moment that the officer determined he had probable cause because of the Defendant's nervousness was unconstitutionally based and improper, and anything beyond that detention is not admissible and should be suppressed; and

c. The search of the Defendant's vehicle based upon his nervousness is clearly in the face of the long-standing series of cases in decisions that say that nervousness alone is not probable cause to search, and therefore the Motion to Suppress should be granted.

This the 18th day of May, 2022.

Respectfully submitted,
/s/*Alexander J. Repasky*
Alexander J. Repasky
State Bar of Georgia 601050
Attorney For Defendant

4880 Lower Roswell Road, Suite 165
Marietta, Georgia 30068
(770) 912-4016
RepaskyLawFirm@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing Supplemental Brief in Support of Motion to Suppress upon all interested parties, by and through their counsel of record, by electronic delivery to the United States Attorney's Office in care of:

Nicholas N. Joy
Office of the United States Attorney – ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA  30303
nicholas.joy@usdoj.gov

This the 18th day of May, 2022.

Respectfully submitted,

/s/*Alexander J. Repasky*
Alexander J. Repasky
State Bar of Georgia 601050
Attorney For Defendant

4880 Lower Roswell Road
Suite 165
Marietta, Georgia  30068
(770) 912-4016
RepaskyLawFirm@gmail.com